## BERGDOLL v. HARRIGAN.

(Circuit Court of Appeals, Third Circuit. November 16, 1914.)

### No. 1851.

BANKRUPTCY (§ 306*)—APPEAL—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action by the trustee of a bankrupt corporation to recover as a voidable preference a sum paid by the bankrupt a week before the bankruptcy to defendant, who until a day or two before had been its president, the admission in evidence, as bearing on the questions of insolvency and defendant's knowledge or means of knowledge, of the inventory and appraisement made in the bankruptcy proceeding, was not prejudicial to defendant, where plaintiff also introduced a witness who, testifying from his own knowledge, aided only by the inventory, placed a valuation on the property at the time of the payment, as assets of a going concern, of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs 1907 to date, & Rep'r Indexes

nearly double the amount of the appraisement, which thereupon became immaterial, since plaintiff was bound by the valuation made by his own witness.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 306.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Frank A. Harrigan, trustee in bankruptcy of the Louis J. Bergdoll Motor Company, against Erwin R. Bergdoll. Judgment for plaintiff, and defendant brings error. Affirmed.

Joseph Gilfillan, of Philadelphia, Pa., for plaintiff in error.

Joseph W. Catherine and Frank A. Harrigan, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action was brought by the trustee of the Louis J. Bergdoll Motor Company, bankrupt, hereinafter referred to as the Company, against Erwin R. Bergdoll, at one time a creditor of the Company, and hereinafter called the defendant, to recover from him the sum of $31,270, which it is alleged he received from the Company as a preferential payment within the meaning of the Bankruptcy Act. The jury rendered a verdict for the plaintiff for the full amount of the claim and interest.

Of the several assignments of errors, those which require a statement of our conclusions are that the trial court erred, first, in refusing to instruct the jury to return a verdict for the defendant; and second, in admitting in evidence the inventory and appraisement of the bankrupt estate.

It appears from the testimony that the Louis J. Bergdoll Motor Company was incorporated on the 18th day of March, 1912, and engaged in the manufacture and sale of automobiles. Its capital stock consisted of 3,000 shares, of which Louis J. Bergdoll, its president, held 2,998 shares. On December 12, 1912, Charles A. and Erwin R. Bergdoll, brothers of Louis J. Bergdoll, were negotiating with Louis J. Bergdoll for the purchase of his stock in the Company, and were appointed by him an executive committee to manage the Company's business. Upon assuming those duties, they, or one or the other of them, were furnished with a statement of the financial standing of the concern under date of December 1st preceding, which showed the net assets then to have been something over $113,000. On January 8, 1913, the 2,998 shares of the capital stock of the Company owned by Louis J. Bergdoll were transferred by him to his brother Erwin R. Bergdoll, the defendant, for the consideration of $1, and thereafter within the same month Erwin R. Bergdoll became president, and together with his brothers, Charles and Grover, became a director of the Company, from which time until March 7, 1913, the defendant with his last-named brothers managed and controlled the business and affairs of the Company.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Statements of resources and liabilities, as well as of profits and losses, were made by the bookkeeper under dates of January 1, February 1, and March 1, 1913, showing net assets of the Company on those dates to have been about $90,000. Between January 15 and February 25, 1913, the defendant 'loaned the Company on open account, by several payments, sums of money aggregating $31,270, and on February 27th thereafter the loan account was closed and notes of the Company were given the defendant for the amount of each individual loan. The funds so loaned were disbursed in the conduct of the business of the Company and commingled with its assets, and no effort was made at the trial by the defendant to trace them into any of the assets in the possession of the Company when the alleged preferential payment was made, or into assets which subsequently came into the possession of the receiver or the trustee of the Company after the filing of the petition in bankruptcy.

On March 5, 1913, the defendant transferred 2,997 of his shares of stock to his mother, Emma C. Bergdoll, and the remaining shares of stock were transferred to individuals who neither purchased them nor were cognizant of the fact that the shares had been transferred to them; the transfer being effected and the new certificates being signed by the defendant, Erwin R. Bergdoll, president, and countersigned by Charles A. Bergdoll, treasurer, of the Company. On March 7, 1913, the defendant and his brothers resigned as officers and directors of the Company, and the three persons to each of whom one share of stock had been issued on March 5th, were elected directors in their places. These were ignorant of the fact that they were stockholders and of their election as directors until some period thereafter, two of them never having attended a meeting of stockholders or of the board of directors of the Company.

On Saturday and Sunday, March 8th and 9th, following, motor cars in course of construction and motor parts to the value of $31,638.25 were transferred from the Company's plant to the premises of another concern, known as the Bergdoll Machine Company, then owned by the defendant, the transfer being made without authority of the Board of Directors of the Motor Company and without knowledge of its officers. On Monday, March 10th, being the day following the day of the transfer of the cars and parts, an employé of the Machine Company handed an employé of the Motor Company a memorandum of the merchandise transferred to the Machine Company, showing the price at which it was purchased or taken over, and delivered to him the Machine Company's check in payment therefor, which was at once deposited in bank to the credit of the Motor Company. The Motor Company thus being in funds, the employé of the Machine Company instructed the employé of the Motor Company to make out a check to the defendant in payment of the notes of the Motor Company held by the defendant. This was done, and in this way it is claimed that Erwin R. Bergdoll, the defendant, secured from the Motor Company the return of the money which he had loaned it.

The alleged preferential payment was made on March 10, 1913, the petition in bankruptcy was filed against the Motor Company on March

17, 1913, and the Company was adjudged bankrupt on April 11, 1913. As evidence of its insolvency, and of the defendant's knowledge of its insolvency, and of the preferential character of the payment at the time it was made, there was introduced testimony showing that the Company was without credit, that its creditors were dunning it for overdue accounts, that a very considerable portion of its accounts collectible was bad, and that its physical assets, carried upon the books at their cost price, were old, obsolete, and depreciated in value. It was further shown that, while the assets of the Company were approximately $91,000, its known liabilities amounted to $167,000, making a deficit of $75,497.88, to all of which information it is claimed the defendant had access, and with all of which it is alleged he was entirely familiar.

Opposed to this testimony, the defendant, for his defense, relied chiefly upon evidence of his ignorance and lack of opportunity to know of the Company's insolvency and of the preferential character of the payment.

The trial judge submitted two issues to the jury: First, whether the Company was insolvent on the date of the alleged preferential payment; and second, whether the defendant, from the surrounding circumstances, knew that the Company was insolvent, or had reasonable cause to believe that it was insolvent, and that the payment of its debt to him would give him a preference over its other creditors.

Without giving to the testimony an extended consideration in this opinion, it is entirely clear that the court below committed no error in refusing to withdraw from the jury the questions of the Company's insolvency and of the defendant's knowledge of an intended preference in paying its debt to him.

The remaining question for consideration is whether the trial court erred in admitting in evidence the inventory and appraisement of the bankrupt estate of the Motor Company. The most pertinent objections made by the defendant to the admission of the inventory and appraisement are that the inventory was made up of personal property that had ceased to be a part of a live and going concern, and that the appraisal thereof was of property that had then become dead, and that, as the appraisers were not in court in the action against him, the defendant was deprived of a right to cross-examine them upon their appraisement.

Oliver A. Bickel, an employé of the Motor Company, produced as a witness for the plaintiff, testified that he was familiar with the quantity, character, and value of the personal assets and stock of the Motor Company at and before the time of its failure; that in February, 1914, at the request of counsel for the trustee, he made an estimate of the value of the stock which the Motor Company had in March, 1913, using the inventory and appraisement of the appraisers in the bankruptcy proceeding only to refresh his memory of the quantity and character of the stock then on hand, and estimated the same was worth at that time about $65,000. This testimony respecting the value of the Company's assets on that date, made with the inventory and appraisement before the witness, and with the assistance which

the data thereby supplied him as to the quantity, but not the value of the stock on hand, and considered with respect to its value as an asset of a going concern at the crucial period of March, 1913, was given and received in evidence. This testimony was produced by the plaintiff, and formed the basis of his claim of the Motor Company's insolvency on March 10, 1913, and by that testimony the plaintiff was bound, notwithstanding the value of the same assets was shown by the inventory and appraisement made in the bankruptcy proceedings to amount only to the sum of $36,621.49.

The defendant neither cross-examined the witness with relation to the figures of the inventory and appraisement nor controverted them by testimony of his own. The defendant may have failed to do this because it was clearly to his advantage to accept the higher figures placed upon the assets by Bickel than to have engaged in a controversy concerning the lower figures placed upon them by the inventory and appraisement. The testimony of Bickel in giving to the Company's assets a value as parts of a live and going business in March, 1913, thus met the defendant's first objection that the inventory and appraisement was of stock that was dead; and his second objection was met by the fact that the plaintiff was bound by the higher figures given by his witness Bickel as to the Company's assets at the time of the alleged preferential payment, without regard to the lesser figures of the appraisement. Therefore the lack of opportunity afforded the defendant to cross-examine the appraisers upon a matter that had ceased to be controlling, in view of the testimony of Bickel, deprived the defendant of no right and did him no prejudice. And this the defendant must himself have thought, in view of his opportunities to cross-examine Bickel upon the figures of the appraisement, and to controvert them by testimony of his own, of neither of which opportunities did he avail himself.

We find nothing in the conduct of the trial below that deprived the defendant of any right or subjected him to any prejudice.

The judgment below is affirmed.